**Mark ROCANOVA, Plaintiff,**

v.

**The UNITED STATES of America and Commissioner of the Internal Revenue of the United States of America, Defendants.**

**No. 95 Civ. 8727(DC).**

United States District Court,
S.D. New York.

May 29, 1996.

---

Mark Rocanova, New York City, pro se.

Mary Jo White, United States Attorney for the Southern District of New York by Linda A. Riffkin, Assistant U.S. Attorney, New York City, for Defendants.

## MEMORANDUM DECISION

CHIN, District Judge.

In this action, plaintiff Mark Rocanova seeks a declaration that the retroactive application of § 11317(c) of Public Law 101–508, which revised § 6502 of the Internal Revenue Code by extending the statute of limitations for collection actions from six years to ten years, is unconstitutional. Rocanova bases this argument on the Due Process Clause of the Fifth Amendment, the Equal Protection Clause, and the *Ex Post Facto* Clause. The parties have cross-moved for summary judgment. Because retroactive application of the ten-year statute of limitations is proper, the government's motion is granted and Rocanova's motion is denied.

## BACKGROUND

From 1981 to 1985, Rocanova was a partner in a California partnership known as Electra Services ("Electra"). During that time, Electra incurred certain tax liabilities pursuant to the Federal Unemployment Tax Act, 26 U.S.C. § 3301, the Federal Insurance Contribution Act, 26 U.S.C. § 3102(a), and income tax withholding requirements of 26 U.S.C. § 3402(a)(1). The liabilities in question were assessed from December 26, 1983 until April 7, 1986.

On April 7, 1986, Electra filed for bankruptcy under Chapter 7 of the Bankruptcy Code. Under the Internal Revenue Code, this filing tolled the statute of limitations on collection of the outstanding tax liabilities for the duration of the bankruptcy proceeding, plus six months. *See* 26 U.S.C. § 6503(h). Since Electra's bankruptcy proceedings concluded on December 11, 1986, the collection period was tolled for fourteen months and four days. Thus, under the old six-year limitations period, the government would have been time-barred from collecting the December 26, 1983 tax assessment on March 2, 1991, that is, six years plus fourteen months and four days after December 26, 1983.[1]

---

1. It is unclear from the record before me how the government arrived at November 30, 1990 as the date that the limitations period would have expired under the six-year statute of limitations.

Before the limitations period ran on any of Electra's outstanding tax liabilities, Congress amended the limitations period by enacting § 11317(c) of Public Law 101–508 (the "Amendment"). Effective November 5, 1990, the Amendment changed the statute of limitations on collection actions from six years to ten years. This amended limitations period applied retroactively to all previously assessed tax liabilities—if the six-year limitations period had not already expired. Under the amended limitations period, the government's time to collect the December 26, 1983 tax assessment would have expired on March 2, 1995.

In October 1993, before its time to collect under the Amendment expired, the IRS served a Notice of Levy on Rocanova's bank account to collect the unpaid tax assessments. In response, in December 1993 Rocanova commenced an adversary proceeding in the United States Bankruptcy Court, claiming that the limitations period had expired and that retroactive application of the amended limitations period was unconstitutional.

On September 5, 1995, at the request of United States Bankruptcy Judge Cornelius Blackshear, Rocanova moved pursuant to 28 U.S.C. § 157(d) to withdraw the reference to the United States Bankruptcy Court. The government did not oppose the motion, so on January 2, 1996, I so ordered a stipulation granting the motion to withdraw the reference. These cross-motions for summary judgment followed.

## DISCUSSION

Rocanova argues that retroactive application [2] of the ten-year statute of limitations is unconstitutional under the Due Process Clause, the Equal Protection Clause, and the *Ex Post Facto* clause. I will address each of these grounds in turn.

(*See* Gov't Br. at 8). In any event, whether the date is November 30, 1990 or March 2, 1991, the limitations period for Rocanova's earliest tax assessment would have expired after the extended statute of limitations took effect on November 5, 1990. Thus, the new limitations period applies to all of Rocanova's tax assessments at issue in this case.

## I. *Due Process Claim*

■ When faced with due process challenges to retroactive tax legislation, the Supreme Court "repeatedly has upheld" the legislation. *United States v. Carlton,* 512 U.S. 26, 30, 114 S.Ct. 2018, 2021, 129 L.Ed.2d 22 (1994) (*citing United States v. Hemme,* 476 U.S. 558, 106 S.Ct. 2071, 90 L.Ed.2d 538 (1986); *United States v. Darusmont,* 449 U.S. 292, 101 S.Ct. 549, 66 L.Ed.2d 513 (1981); *Welch v. Henry,* 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87 (1938); *United States v. Hudson,* 299 U.S. 498, 57 S.Ct. 309, 81 L.Ed. 370 (1937); *Milliken v. United States,* 283 U.S. 15, 51 S.Ct. 324, 75 L.Ed. 809 (1931); *Cooper v. United States,* 280 U.S. 409, 50 S.Ct. 164, 74 L.Ed. 516 (1930)). The standard applied in determining the validity of retroactive tax legislation under the Due Process Clause is whether " 'retroactive application is so harsh and oppressive as to transgress the constitutional limitation.' " *Carlton,* 512 U.S. at 30, 114 S.Ct. at 2022 (*quoting Welch,* 305 U.S. at 147, 59 S.Ct. at 126). Under the "harsh and oppressive" standard, retroactive tax legislation will be upheld if the government can show that "the retroactive application of the legislation is itself justified by a rational legislative purpose." *Id. (quoting Pension Benefit Guar. Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 730, 104 S.Ct. 2709, 2718, 81 L.Ed.2d 601 (1984)).

Here, the government's stated intent in enacting the Amendment was to raise revenues without raising taxes or imposing a new tax and to reduce the government's potential losses from assessed, but unpaid, tax liabilities. The comments of Senator Lieberman and Senator Glenn, the Amendment's sponsors, on the Senate floor evidence this intent. Senator Lieberman noted that the Amendment could "raise as much as $600 million in the next 5 years, and it asks nothing more of law-abiding, taxpaying citizens of America."

2. In its Reply Memorandum of Law, the government argues that the amended § 6502(a) is not a retroactive statute because it does not apply to collection periods that have already expired. The government is wrong; § 6502 is plainly a retroactive statute as the new limitations period applies to existing as well as future tax liabilities.

136 Cong. Rec. § 1577–02, § 15805 (Oct. 18, 1990). The Senator continued that, faced with the need to raise taxes, "few things could be more important than our ability to collect taxes that are admittedly owed to the Federal Government but are not being paid." *Id.* Senator Lieberman also noted that the Amendment was "fair" because "it would not apply to those assessments as to which the current statute of limitations has already expired." *Id.*

Senator Glenn stated that the government was unable to collect $600 million in 1983 and $2.1 billion in 1989 due to the expiration of the statute of limitations. *Id.* By extending the statute of limitations to ten years, the government could collect an additional $250 to $600 million over five years. *Id.* As these comments make clear, the purpose of the Amendment and its retroactive application was to raise revenue without imposing additional prospective tax liabilities. Such a purpose is rational and reasonable. *See Carlton,* 512 U.S. at 32, 114 S.Ct. at 2023.

Other factors to be considered in assessing retroactive tax legislation include (1) whether the legislation abrogates vested rights, (2) whether the taxpayer relied on prior law so that, had he been able to foresee enactment of the legislation, he may have avoided the tax, and (3) whether the period of retroactivity is itself unduly harsh. *Canisius College v. United States,* 799 F.2d 18, 25–27 (2d Cir. 1986), *cert. denied,* 481 U.S. 1014, 107 S.Ct. 1887, 95 L.Ed.2d 495 (1987).

Here, each of these factors favors the government. First, the extended limitations period does not abrogate any rights of the taxpayer. Rocanova did not have a "right" to avoid his tax liabilities after six years. Thus, by extending the statute of limitations to ten years, the government did not abrogate any of Rocanova's rights. Similarly, by merely extending the statute of limitations, Congress in no way created a new liability, imposed a new tax, or imposed any other new obligation on Rocanova whatsoever. The Amendment's only effect is that the government has more time to collect taxes that Rocanova admittedly owes but has not paid.

Second, Rocanova could not have relied on the prior limitations period to avoid the tax, for he admittedly owed the taxes that were assessed. If the new limitations period applied retroactively to revive expired claims, Rocanova could argue that its retroactive application upset his settled expectation of finality. The Amendment, however, only applied to still existing claims. Thus, the longer limitations period does not interfere with any of Rocanova's valid expectations.

Third, although the Amendment allows the government to collect taxes that were assessed as many as six years earlier,[3] that amount of time does not by itself give rise to a due process claim. Generally, retroactive tax legislation only applies to the previous tax year. *Canisius College,* 799 F.2d at 26. Nevertheless, "[t]here is nothing intrinsic in the 'harsh and oppressive' test . . . that requires a one-year bench mark as the constitutional limit of retroactivity." *Id.* at 26–27; *see also Wiggins v. Commissioner of Internal Revenue,* 904 F.2d 311, 316 (5th Cir. 1990). Instead, tax legislation should be reviewed on a case-by-case basis, considering " 'the nature of the tax and the circumstances in which it is laid.' " *Canisius College,* 799 F.2d at 27 (*quoting Welch,* 305 U.S. at 147, 59 S.Ct. at 126).

Here, I find that there is nothing inappropriate about the length of retroactivity. The very purpose of the Amendment required its application to all existing tax liabilities. Furthermore, Congress specifically avoided the harsh result of resurrecting limitations periods that had already expired. Given the statute's purpose and the nature of limitations periods in general, there was no way to avoid a period of retroactivity of several years. Under the circumstances, such retroactive application does not give rise to a due process claim.

---

3. In general, the Amendment does not apply to assessments that are more than six years old because it cannot revive expired claims. In some instances, however, such as this one, the Amendment will affect assessments that are more than six years old because the old statute of limitations had been tolled under some other statutory provision.

## II. *Equal Protection Claim*

■ Rocanova also argues that the retroactive application of the Amendment violates the Equal Protection Clause. The Equal Protection Clause guarantees that a state will not subject an individual to invidious discrimination. *Harris v. McRae*, 448 U.S. 297, 322, 100 S.Ct. 2671, 2691, 65 L.Ed.2d 784 (1980). To determine whether a state has acted in a discriminatory manner, the plaintiff must show that the state has acted to the disadvantage of some class of people. *Maher v. Roe*, 432 U.S. 464, 470, 97 S.Ct. 2376, 2380–81, 53 L.Ed.2d 484 (1977). Generally, a statutory classification is valid if it is rationally related to a legitimate governmental purpose. *Regan v. Taxation With Representation*, 461 U.S. 540, 547, 103 S.Ct. 1997, 2001, 76 L.Ed.2d 129 (1983). Congress enjoys particularly broad latitude "in creating classifications and distinctions in tax statutes." *Id.*

Rocanova defines the class at issue as "a class of people who have existing tax assessments on November 5, 1990, regardless of the time in which those existing tax assessments were made, so long as the six-year statute of limitations had not yet passed on that date." (Plaintiff's Br. at 30). As discussed at length above, however, the classification purportedly created by retroactive application of the Amendment is rationally related to the legitimate governmental purpose of raising revenue without imposing new or additional tax liabilities. Thus, retroactive application of the Amendment does not give rise to an equal protection claim.

## III. *Ex Post Facto Claim*

■ Rocanova's final argument is that the retroactive tax legislation constitutes punishment and thus violates the *Ex Post Facto* Clause. The *Ex Post Facto* Clause does not apply to civil tax legislation that does not impose punishment. *See United States Trust Co. v. New Jersey*, 431 U.S. 1, 17 n. 13, 97 S.Ct. 1505, 1515 n. 13, 52 L.Ed.2d 92 (1977); *Bankers' Trust Co. v. Blodgett*, 260 U.S. 647, 652, 43 S.Ct. 233, 235, 67 L.Ed. 439 (1923). In no way does extending the statute

of limitations provided in § 6205(a), particularly where the Amendment did not apply to expired claims, constitute punishment.[4] Accordingly, the *Ex Post Facto* Clause simply is inapplicable to this case.

### CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is denied and defendants' motion for summary judgment is granted. The Clerk of the Court is directed to enter judgment in favor of the defendants dismissing the complaint with prejudice and without costs.

SO ORDERED.

---

4. Notably, in an unpublished disposition, the Eighth Circuit rejected the very *ex post facto* argument that Rocanova raises here. *Newgard v.* *United States*, No. 91–3288, 1992 WL 74593, at *1 (8th Cir. Apr.15, 1992).