T.C. Memo. 2004-285

UNITED STATES TAX COURT

HOWARD DYSLE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12802-03L.               Filed December 27, 2004.

Howard Dysle, pro se.

<u>Huong T. Duong</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Pursuant to section 6330(d),[1] petitioner
seeks review of respondent's determination regarding collection
of his 1996 and 1998 income tax liabilities.

_____

[1]  Unless otherwise indicated, all section references are to
the Internal Revenue Code, and all Rule references are to the Tax
Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.  At the time he filed the petition, petitioner resided in Capitola, California.

Petitioner filed two extensions of time to file his 1996 return, and respondent granted extensions of time to file his 1996 return to August 15 and October 15, 1997.  On November 23, 1998, respondent filed a substitute return for petitioner for 1996.  Petitioner's transcript of account reflects that petitioner filed a 1996 return on March 24, 1999.

Petitioner timely filed his 1998 return.  Petitioner listed a total tax and an amount owed of $508.  Petitioner signed his 1998 return on March 15, 1999.

On August 23, 1999, respondent assessed for 1996 taxes of $6,620, a late filing penalty of $1,407.15, an estimated tax penalty of $330.71, a failure to pay tax penalty of $865.36, and interest of $1,517.79.

On April 15, 2001, petitioner signed a Form 1040, U.S. Individual Income Tax Return, for 1996.  Petitioner submitted the Form 1040 for 1996 in 2001 and listed a total tax of $4,471.  The Form 1040 for 1996 submitted in 2001 bears a received stamp dated April 21, 2001.

On December 31, 2001, respondent abated $2,149 in tax for 1996.  Respondent subsequently abated portions of the additions to tax and interest for 1996 to reflect the revised assessment of tax of $4,471 (i.e., $6,620 minus $2,149) for 1996.

On or about June 6, 2002, respondent filed a notice of Federal tax lien regarding petitioner's 1996 and 1998 tax years (notice of lien).  As of the date of the notice of lien, petitioner's unpaid balance was $6,584.99 for 1996 and $96.75 for 1998.

On June 11, 2002, respondent sent petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 regarding petitioner's 1996 and 1998 tax years (hearing notice).

On June 20, 2002, petitioner timely filed a Form 12153, Request for a Collection Due Process Hearing, regarding his 1996 and 1998 tax years (hearing request).  In the hearing request, petitioner stated that he had not been credited with payments he made to the Internal Revenue Service (IRS).  In a supplemental Form 12153 submitted to the IRS regarding his 1993 through 2000 tax years, petitioner stated that he did not owe the IRS anything and that the IRS failed to credit petitioner with payments he made.

On December 16, 2002, respondent mailed petitioner a letter identifying Settlement Officer Ron Wergin (Mr. Wergin) as assigned to conduct petitioner's hearing.

On January 6, 2003, petitioner telephoned Mr. Wergin. Petitioner told Mr. Wergin that there were missing payments (i.e., payments he did not receive credit for), but he was not sure for which year. Mr. Wergin asked petitioner to send him the fronts and backs of canceled checks designated for tax years 1996 and 1998. Petitioner requested a face-to-face hearing.

On May 1, 2003, Mr. Wergin telephoned petitioner and asked him to bring to the face-to-face hearing proof of the missing payments that petitioner claimed were not applied to his tax liabilities for 1996 and 1998.

On May 12, 2003, a face-to-face hearing was held between petitioner and Mr. Wergin. At the hearing, petitioner raised the issues of his underlying tax liability and whether payments had been properly applied to his account. Petitioner made a presentation on payments of tax, excluding interest and penalties, he alleged he made. Mr. Wergin provided petitioner with transcripts of his account for 1994 through 2001. Mr. Wergin again asked petitioner to provide copies of the fronts and backs of canceled checks for the tax years 1996 and 1998 by May 27, 2003.

At the hearing, Mr. Wergin offered petitioner the opportunity to enter into an installment agreement. Petitioner declined the offer. Mr. Wergin gave petitioner a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, so he could consider whether petitioner should be placed in currently not collectible status. Mr. Wergin asked petitioner to return the Form 433-A by May 27, 2003.

On May 27, 2003, petitioner faxed Mr. Wergin a letter discussing three $500 checks petitioner claimed to have mailed to the IRS between January 1995 and sometime in 1996 and a handwritten ledger with amounts petitioner claimed were taxes due and tax paid for 1993 through 2000. Petitioner had already provided the ledger to Mr. Wergin at the hearing.

That same day, Mr. Wergin called petitioner to advise him that he was closing his case, but petitioner could still submit proof of missing payments for 1996 and 1998 to IRS Compliance. Petitioner stated that he identified all of his payments in the transcripts for 1994 through 2001 that Mr. Wergin provided to him.

On July 7, 2003, respondent issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 to petitioner regarding his 1996 and 1998 tax years (notice of determination). As of the date of the notice of determination,

petitioner did not submit proof of missing payments for 1996 and 1998 or a completed Form 433-A to Mr. Wergin.

In the notice of determination, respondent determined that the notice of lien was appropriate, balanced the need for efficient collection with the legitimate concerns of the taxpayer, and was no more intrusive than necessary. In an attachment to the notice of determination, Mr. Wergin stated: (1) He considered only matters related to 1996 and 1998 as petitioner received a hearing notice only for those two years; (2) he verified that all requirements of any applicable law or administrative procedure had been met; (3) he reviewed petitioner's underlying liability for 1996; (4) he reviewed whether payments were properly credited to petitioner's account; (5) he provided petitioner official transcripts of his 1996 and 1998 tax years; (6) he offered petitioner an installment agreement to pay the outstanding balance that petitioner declined; (7) he told petitioner he might be eligible for uncollectible status given petitioner's statements about his finances; (8) he provided petitioner a Form 433-A, but petitioner did not return the Form 433-A; and (9) he gave petitioner additional time after the hearing to provide proof, including canceled checks, but petitioner did not submit this information to him.

OPINION

Section 6320 provides that the Secretary shall furnish the person described in section 6321 with written notice (i.e., the hearing notice) of the filing of a notice of lien under section 6323. Section 6320 further provides that the taxpayer may request administrative review of the matter (in the form of a hearing) within a 30-day period. The hearing generally shall be conducted consistent with the procedures set forth in section 6330(c), (d), and (e). Sec. 6320(c).

Pursuant to section 6330(c)(2)(A), a taxpayer may raise at the section 6330 hearing any relevant issue with regard to the Commissioner's collection activities, including spousal defenses, challenges to the appropriateness of the Commissioner's intended collection action, and alternative means of collection. Sego v. Commissioner, 114 T.C. 604, 609 (2000); Goza v. Commissioner, 114 T.C. 176, 180 (2000). If a taxpayer received a statutory notice of deficiency for the years in issue or otherwise had the opportunity to dispute the underlying tax liability, the taxpayer is precluded from challenging the existence or amount of the underlying tax liability. Sec. 6330(c)(2)(B); Sego v. Commissioner, supra at 610-611; Goza v. Commissioner, supra at 182-183.

When the Commissioner issues a determination regarding a disputed collection action, section 6330(d) permits a taxpayer to

seek judicial review with the Tax Court or a U.S. District Court, as is appropriate.  If the underlying tax liability is properly at issue, we review that issue de novo.  Sego v. Commissioner, supra at 610; Goza v. Commissioner, supra at 181.  If the validity of the underlying tax liability is not at issue, we review the Commissioner's determination for an abuse of discretion.  Sego v. Commissioner, supra at 610.

Petitioner did not receive a statutory notice of deficiency for 1996 or 1998.  Respondent ultimately assessed petitioner's 1996 and 1998 tax based on the returns for 1996 and 1998 petitioner submitted to the IRS.  Petitioner raised the issue of his underlying liability for 1996 at the hearing.  Accordingly, petitioner's underlying liability for 1996 is properly before the Court, and we review that issue de novo. See Montgomery v. Commissioner, 122 T.C. 1 (2004); Sego v. Commissioner, supra; Goza v. Commissioner, supra.

In the hearing request and a supplemental Form 12153, petitioner stated that he had not been credited with payments he made to the IRS.  We review de novo respondent's determination regarding the amount unpaid after application of credits to which petitioner is entitled.  Boyd v. Commissioner, 117 T.C. 127, 131 (2001) (where the issue is "the amount of tax owed that remains unpaid" we review respondent's determination de novo as this is a

challenge to the validity of the underlying tax liability);
Landry v. Commissioner, 116 T.C. 60, 62 (2001).

Timely Filing for 1996

Petitioner claims that he timely filed his 1996 return.
Section 6651(a)(1) imposes an addition to tax for failure to file
a return on the date prescribed (determined with regard to any
extension of time for filing), unless the taxpayer can establish
that such failure is due to reasonable cause and not due to
willful neglect.

Petitioner claimed that he filed his original 1996 return
around August 1997.  Petitioner testified that he filed three tax
returns for 1996, but that he no longer had any copies of the
returns he filed for 1996.  Petitioner testified that he did not
mail his return via certified mail.

The Court is not required to accept petitioner's
unsubstantiated testimony.  See Wood v. Commissioner, 338 F.2d
602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964).  We found
petitioner's testimony to be general, vague, conclusory, and/or
questionable in certain material respects.  Under the
circumstances presented here, we are not required to, and
generally do not, rely on petitioner's testimony to conclude that
he timely filed his 1996 return.  See Lerch v. Commissioner, 877
F.2d 624, 631-632 (7th Cir. 1989), affg. T.C. Memo. 1987-295;
Geiger v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971),

affg. per curiam T.C. Memo. 1969-159; <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986).

Additionally, petitioner's testimony regarding the 1996 return that he claims to have mailed in August 1997 suggests that this return was never received by respondent. Petitioner testified that a $500 check he included with the 1996 return he claimed to have mailed in August 1997 was never cashed or returned to him. Furthermore, shortly before trial, in a filing with the Court, petitioner averred that his original return for 1996 was dated April 19, 1999, and was mailed to the IRS on or about April 20, 1999.

Petitioner did not call his accountant, who prepared his 1996 return, as a witness. We infer that the accountant's testimony would not have been favorable to petitioner. <u>Wichita Terminal Elevator Co. v. Commissioner</u>, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).

We conclude petitioner did not timely file his 1996 return. Petitioner offered no evidence that his failure to timely file was due to reasonable cause and not due to willful neglect. We conclude that petitioner is liable for an addition to tax pursuant to section 6651(a)(1).

<u>Checks Allegedly Not Applied to Petitioner's Account</u>

Petitioner claims that certain checks he submitted to the IRS were not credited to his account. Respondent argues that

this is a new issue that was not raised at the hearing, and therefore it is not subject to review by the Court pursuant to Magana v. Commissioner, 118 T.C. 488 (2002).  We disagree. Petitioner raised this issue at the hearing, and it is properly before the Court.

Petitioner presented no documentary evidence to support his testimony that he submitted to the IRS the alleged checks that he claims were not applied to his account.[2]  The Court is not required to accept petitioner's unsubstantiated testimony.  See Wood v. Commissioner, supra.  As stated supra, we found petitioner's testimony to be general, vague, conclusory, and/or questionable in certain material respects.  Under the circumstances presented here, we are not required to, and generally do not, rely on petitioner's testimony to conclude that he submitted any of these three checks to respondent or that respondent failed to apply these amounts to petitioner's account. See Lerch v. Commissioner, supra; Geiger v. Commissioner, supra; Tokarski v. Commissioner, supra.

---

[2]  Petitioner attached to his posttrial brief documents to support his claim that payments were not appropriately applied to his account.  Evidence must be submitted at trial; documents attached to briefs and statements therein are not evidence.  Rule 143(b); Lombard v. Commissioner, T.C. Memo. 1994-154 n.3, affd. without published opinion 57 F.3d 1066 (4th Cir. 1995); Wicker v. Commissioner, T.C. Memo. 1993-431 n.15, affd. without published opinion 50 F.3d 12 (8th Cir. 1995).  Accordingly, we disregard these documents in reaching our decision.

Petitioner has failed to raise a spousal defense, make a valid challenge to the appropriateness of respondent's intended collection action, or offer alternative means of collection. These issues are now deemed conceded.  See Rule 331(b)(4).

We conclude that respondent correctly determined to sustain the notice of lien.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.